**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **JESSICA H. CAPWELL,**<br>Plaintiff,<br>v.<br>**BANK OF AMERICA, N.A.; EQUIFAX INFORMATION SERVICES, LLC; TRANSUNION LLC; and EXPERIAN INFORMATION SOLUTIONS, INC.,**<br>Defendants. | Civil Action No. _______________<br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Jessica H. Capwell, by and through her attorney, complains of Defendants as follows:

**PRELIMINARY STATEMENT**

1. This is an action brought by Plaintiff Jessica H. Capwell against the three nationwide consumer reporting agencies — Equifax Information Services, LLC, Transunion LLC, and Experian Information Solutions, Inc. (collectively, the "CRA Defendants") — and against Bank of America, N.A. ("Bank of America"), the furnisher of the disputed account, under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. Plaintiff further brings claims against Bank of America under the Truth in Lending Act, including its Fair Credit Billing Act provisions (collectively, "TILA"), 15 U.S.C. § 1601 et seq., arising from Bank of America's treatment of the unauthorized charges as an authorized debt of Plaintiff.

2. Plaintiff is the victim of a coordinated street-fraud scheme. On September 14, 2025, two perpetrators posing as charitable solicitors took physical possession of Plaintiff's credit card and her cellular telephone and, without her knowledge or authorization, caused seven unauthorized charges of $5,000 each — totaling $35,000 — to be made against her Bank of America credit card account. The scheme was one of a series of nearly identical frauds then under investigation by the Boston Police Department, and the scheme and the resulting investigation were widely reported in Boston-area news outlets.

3. Ms. Capwell is a young woman, born in 1993. She was singled out on a public sidewalk, manipulated into surrendering her credit card and her cellular telephone, and defrauded of $35,000 in a matter of minutes. What followed was worse. For the better part of a year, the

institutions she turned to for help — her own bank and the three nationwide credit bureaus — denied her account of an obvious fraud, shuffled her from department to department, and repeatedly restored the very debt they had been shown was not hers.

4. Plaintiff reported the fraud to Bank of America the same day, filed a report with the Boston Police Department, submitted an Identity Theft Report to the Federal Trade Commission, and repeatedly disputed the fraudulent account — both with Bank of America and with each of the CRA Defendants — providing supporting documentation. Notwithstanding these disputes and supporting documentation, Bank of America repeatedly denied Plaintiff's fraud claim on shifting and inconsistent grounds and continued to furnish the fraudulent account as an accurate and growing obligation of Plaintiff, and the CRA Defendants verified, reinserted, or continued to report the account as accurate. As a result, Plaintiff has suffered actual damages and is entitled to actual, statutory, and punitive damages, together with costs and attorney's fees, and to a declaration that she is not liable for the debt.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiff's claims arising under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, and over Plaintiff's claims arising under the Truth in Lending Act and Fair Credit Billing Act, 15 U.S.C. § 1601 et seq., pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1640(e), each of which provides that an action to enforce liability created thereunder may be brought in any appropriate United States district court without regard to the amount in controversy.

6. Venue is appropriately laid in the District of Massachusetts under 28 U.S.C. § 1391(b)(2) as the events causing the claim occurred substantially within the Commonwealth of Massachusetts.

## PARTIES

7. Plaintiff Jessica H. Capwell, born in 1993, is a natural person residing in Boston, Massachusetts, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8. Defendant Bank of America, N.A. ("Bank of America") is a national banking association that regularly conducts business in Massachusetts and maintains an agent for service of process at CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110. Bank of America is a "person" that furnishes information to consumer reporting agencies within the meaning of 15 U.S.C. § 1681s-2, and is a "card issuer" and "creditor" within the meaning of 15 U.S.C. § 1602.

9. Defendant Equifax Information Services, LLC ("Equifax") is headquartered in Atlanta, Georgia. Equifax regularly conducts business in Massachusetts and maintains an agent for service of process at Corporation Service Company, 84 State Street, Boston, Massachusetts 02109. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

10. Defendant Transunion LLC ("Transunion") is headquartered in Chicago, Illinois. Transunion regularly conducts business in Massachusetts and maintains an agent for service of process at Corporation Service Company, 84 State Street, Boston, Massachusetts 02109. Transunion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

11. Defendant Experian Information Solutions, Inc. ("Experian") is headquartered in Costa Mesa, California. Experian regularly conducts business in Massachusetts and maintains an agent for service of process at CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

12. Equifax, Transunion, and Experian are referred to collectively as the "CRA Defendants."

## FACTUAL ALLEGATIONS

***The fraudulent scheme***

13. On Sunday, September 14, 2025, at approximately 12:00 p.m., Plaintiff was approached by two men outside the Whole Foods grocery store on Westland Avenue in Boston, Massachusetts.

14. The two men solicited a charitable donation, stating they were collecting for the funeral of a child who had been killed. Plaintiff agreed to donate $15.00, and no more.

15. The men declined Plaintiff's offer to pay by Apple Pay, with one man stating that his mobile telephone functioned as a card reader and that a physical credit card was required. Plaintiff provided her physical Bank of America Visa Signature credit card, account ending in 6470 (the "Account"), for the sole purpose of a single $15.00 transaction.

16. After Plaintiff asked for a receipt, the men directed her to enter her information on her own telephone through a "Square" website and then handed her a clipboard, on which she wrote her name, email address, and the $15.00 donation amount. While Plaintiff was occupied with the clipboard, the other man took possession of Plaintiff's cellular telephone.

17. While Plaintiff's telephone was in the perpetrators' possession, and without Plaintiff's knowledge or authorization, the perpetrators caused seven separate charges of $5,000.00 each — totaling $35,000.00 — to be made against the Account, payable to a payee identified on the Account as "PP*JESSICA WALKER LAFAYETTE IN."

18. Upon information and belief, while Plaintiff's telephone was in their possession, the perpetrators responded to a fraud-verification text message sent by Bank of America in order to cause the unauthorized charges to be approved.

19. The credit limit on the Account was $22,000.00. The $35,000.00 in unauthorized charges exceeded the credit limit by approximately $13,000.00.

20. Plaintiff did not authorize the seven charges, did not consent to any transaction other than the single $15.00 donation, and received no benefit from the unauthorized charges.

21. The scheme to which Plaintiff fell victim was one of a series of nearly identical frauds then occurring in the Boston area. On October 16, 2025, the Boston Police Department issued a community alert describing the same pattern — perpetrators soliciting charitable donations, handling victims' telephones and credit cards, and charging unauthorized amounts — and reporting eleven such local incidents totaling approximately $170,700 in losses.

***Plaintiff reports the fraud***

22. Within minutes of the encounter, Plaintiff discovered the unauthorized charges and contacted Bank of America the same day, September 14, 2025, to report the fraud and to state that she had not authorized the charges.

23. On September 27, 2025, Plaintiff filed a report with the Boston Police Department, which was assigned Incident Number 252081340 and classified as "Fraud — False Pretense / Scheme."

24. Plaintiff also submitted an Identity Theft Report to the Federal Trade Commission, assigned FTC Report Number 200114182, identifying the Account and the $35,000 in fraudulent charges.

***Bank of America repeatedly denies the fraud claim***

25. On or about September 23, 2025, Bank of America denied Plaintiff's fraud claim (Claim No. 250914G1A27F) in the amount of $35,000, stating that "the charge was authorized by you or made by someone who has permission to use the card," and reversed the temporary credits it had previously applied to the Account.

26. On or about September 29, 2025, a Bank of America representative instructed Plaintiff to re-file her claim as a "billing dispute," asserting that what had occurred "did not qualify as fraud," and acknowledged having spoken with three to four other victims of the same type of scam within the preceding week.

27. On October 2, 2025, Plaintiff sent Bank of America, by certified mail, a written dispute enclosing her police report and a detailed statement of the fraud.

28. On or about October 3, 2025, Bank of America again denied the claim, repeating that the charges were authorized, and stated that it had contacted Transunion, Experian, Equifax, and Innovis to add a comment that Plaintiff disagreed with the result.

29. On or about October 23, 2025, Bank of America again denied the claim, this time on the inconsistent ground that "the chip was read, your PIN was entered, and/or you signed for the transaction" and that "the card was present" — notwithstanding that the unauthorized charges were card-not-present style transactions where the card information was manually entered into the payee's processing system.

30. On October 29, 2025, Plaintiff faxed a second written dispute to Bank of America.

31. On November 17, 2025, Plaintiff re-sent her written disputes to Bank of America by certified mail, addressed to the location designated in her Credit Card Agreement.

32. On or about November 18, 2025, Bank of America issued a debt validation notice reflecting a balance of $35,028.07 and advising Plaintiff of a 30-day period within which to dispute the debt.

33. On or about November 29, 2025, Bank of America again denied the claim on the same "chip/PIN/signature" ground.

34. On December 15, 2025, Plaintiff sent Bank of America, by certified mail, a timely written dispute of the entire $35,028.07 balance, disputing the debt, requesting validation of the debt, and advising that she had retained counsel. Bank of America did not provide the debt validation Plaintiff requested.

35. Beginning in January 2026 and continuing on a regular basis through at least June 15, 2026, Bank of America sent Plaintiff a series of past-due and account-servicing notices stating that the communications were "an attempt to collect a debt," as the reported balance increased from $35,757 to $36,516 and then to $37,291.23. These notices have continued to the present, including a past-due notice dated June 15, 2026 that Bank of America sent by commercial courier (UPS) rather than by ordinary mail.

36. On or about January 15, 2026, Bank of America issued an account closure and adverse action notice closing Plaintiff's account for "current or past delinquency," and stated that its decision was based in part on information obtained from Transunion.

37. On or about March 11, 2026, Bank of America re-opened the matter as an identity-theft claim (Claim No. 260311G18E5C) in the amount of $37,291.23.

38. On or about May 4, 2026, Bank of America again denied the claim, this time on the new ground that "statements were mailed to the address on file and payments have been made on the account" — a rationale unresponsive to Plaintiff's dispute that the underlying charges were unauthorized.

39. At no time did Bank of America cease furnishing the fraudulent Account to the CRA Defendants or correct the information it furnished, notwithstanding Plaintiff's repeated disputes and the documentation of fraud in its possession.

***Plaintiff disputes the Account with the CRA Defendants***

40. Plaintiff disputed the fraudulent Account, in writing and with supporting documentation, with each of the CRA Defendants, enclosing the relevant portion of her credit report and her police report.

41. Plaintiff disputed the Account with Experian by written dispute mailed on or about February 7, 2026.

42. On or about February 18, 2026, Experian sent Plaintiff identity-theft rights information in connection with the dispute (report number 3143-0332-20).

43. On or about February 23, 2026, Experian responded that "the company that reported the information has certified to Experian that the information is accurate," that the item "was not changed," and that the Account "Remains" on Plaintiff's credit report.

44. On or about March 11, 2026, Experian declined to block the Account as the product of identity theft, stating that it was "unable to honor your request because you did not provide proof of your identity."

45. In April 2026, Plaintiff supplied Experian with proof of her identity, a copy of her FTC Identity Theft Report, and her police report.

46. Upon information and belief, on or about May 2026, Experian placed a fraud alert on Plaintiff's file.

47. On or about June 6, 2026, Experian deleted the fraudulent Account from Plaintiff's credit report.

48. Plaintiff disputed the Account with Transunion by letter dated February 16, 2026, which was mailed on February 25, 2026 (Transunion file number 394772313).

49. On or about March 3, 2026, Transunion notified Plaintiff that, as a result of its reinvestigation, the disputed Account had been "DELETED" from her credit file.

50. On or about May 5, 2026, Transunion placed a one-year fraud alert on Plaintiff's file based on her report of identity theft.

51. On or about May 6, 2026, Transunion notified Plaintiff that the "previously deleted item has been verified" and therefore had been "added back" to her credit file, thereby reinserting the fraudulent Account, which then reflected a balance of approximately $37,291.

52. Plaintiff disputed the Account with Equifax by letter dated February 16, 2026, which was mailed on February 25, 2026.

53. On or about March 5, 2026, Equifax declined to block the Account, converted the dispute to a furnisher reinvestigation, requested Plaintiff's identification and FTC report, and stated that it would provide results within 30 days.

54. In April 2026, Plaintiff supplied Equifax with a copy of her driver's license, her FTC Identity Theft Report, and her police report.

55. On or about May 5, 2026, Equifax placed a one-year fraud alert on Plaintiff's file.

56. On or about May 6, 2026, Equifax notified Plaintiff that the Account was "not currently reporting" on her Equifax credit report; the same day, Equifax sent Plaintiff a separate letter indicating that it had been unable to remove the disputed information and that the information would remain pending the outcome of a furnisher reinvestigation.

57. On or about May 15, 2026, Equifax notified Plaintiff that, although the item had been removed, "[t]he company . . . requested to have the information reinserted . . . and submitted a certification" and that "Equifax has reinserted the item," thereby reinstating the fraudulent Account, which then reflected a balance of approximately $37,291.

***The CRA Defendants forwarded the disputes; Bank of America certified the debt***

58. Upon information and belief, each of the CRA Defendants forwarded Plaintiff's disputes and supporting documentation to Bank of America in connection with its reinvestigation.

59. Notwithstanding Plaintiff's disputes and the documentation of fraud, Bank of America verified and certified the fraudulent Account as accurate, causing Transunion and Equifax to reinsert the Account after each had deleted it.

***Plaintiff's persistent efforts to correct the record***

60. From September 14, 2025 onward, Ms. Capwell pursued the correction of the fraudulent Account with extraordinary diligence. She reported the fraud to Bank of America the same day; filed a report with the Boston Police Department; submitted an Identity Theft Report to the Federal Trade Commission; and, over the following months, made more than a dozen separate written and telephonic attempts to resolve the matter — including repeated telephone calls to Bank of America, multiple written disputes and an in-person branch visit, a formal debt-validation dispute, and written disputes (each with supporting documentation, and twice supplemented) to each of the three CRA Defendants.

61. At nearly every turn, Ms. Capwell was denied on shifting grounds, was told that her fraud "did not qualify" as fraud, was asked to re-submit information she had already provided, or — after a credit bureau had deleted the fraudulent Account — was confronted with its reinsertion. Ms. Capwell did everything that a consumer could reasonably be asked to do to correct the record; the Defendants did not.

***Willfulness and damages***

62. The Defendants' continued reporting, verification, reinsertion, and furnishing of the fraudulent Account occurred after Plaintiff provided a police report, an FTC Identity Theft Report, and repeated written disputes establishing that the Account was the product of fraud and identity theft. The Defendants' conduct was, at a minimum, negligent, and more likely willful, in reckless disregard of Plaintiff's rights.

63. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered actual damages, including but not limited to economic loss, lost opportunity to receive credit, harm to her creditworthiness and credit standing — including a decline in her credit score and the loss of the benefit of her oldest and longest-established line of credit — damage to her reputation, invasion of privacy, interference with her normal and usual activities, the

loss of time and out-of-pocket expense incurred in disputing the inaccurate information, and emotional distress, anxiety, frustration, and humiliation.

64. For the better part of a year between the fraud and the filing of this action, Ms. Capwell was consumed by the effort to correct the fraudulent Account. During this period, she was actively interviewing for new employment and lived in fear that the fraudulent $35,000 delinquency reported in her name would surface in a background or credit check and cost her a job offer. That fear caused Ms. Capwell to alter her conduct, to hesitate in pursuing opportunities, and to suffer sustained anxiety and distress — harms separate from, and in addition to, the lost time and out-of-pocket expense she incurred in her remediation efforts.

## CAUSES OF ACTION

### COUNT I — VIOLATION OF 15 U.S.C. § 1681i
### (As to the CRA Defendants)

65. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

66. Upon receiving notice of Plaintiff's disputes, each of the CRA Defendants was required by 15 U.S.C. § 1681i(a) to conduct a reasonable reinvestigation to determine whether the disputed Account information was inaccurate, to record the current status of the disputed information or delete it, and to provide Plaintiff with the results of the reinvestigation within the time prescribed by the statute.

67. Each of the CRA Defendants failed to conduct a reasonable reinvestigation and instead verified, continued to report, or reinserted the fraudulent Account as an accurate obligation of Plaintiff, despite having documentation establishing that the Account was the product of fraud and identity theft.

68. Experian further verified the Account as "accurate" on or about February 23, 2026, notwithstanding the police report and dispute documentation in its possession.

69. Transunion and Equifax further violated 15 U.S.C. § 1681i(a)(5)(B) by reinserting the previously deleted Account without complying with the statute's requirements for reinsertion, including the requirement that any reinsertion follow certification by the

furnisher that the information is complete and accurate, and the requirement of timely written notice to Plaintiff of the reinsertion.

70. The CRA Defendants' violations of § 1681i were willful, entitling Plaintiff to relief under 15 U.S.C. § 1681n, or, in the alternative, negligent, entitling Plaintiff to relief under 15 U.S.C. § 1681o.

**COUNT II — VIOLATION OF 15 U.S.C. § 1681e(b)**
**(As to the CRA Defendants)**

71. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72. Each of the CRA Defendants prepared and issued consumer reports concerning Plaintiff that included the fraudulent Account. Section 1681e(b) required each of the CRA Defendants to follow reasonable procedures to assure the maximum possible accuracy of the information in those reports.

73. Each of the CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy and instead reported the fraudulent Account as an accurate obligation of Plaintiff when, in fact, the Account was the result of fraud and identity theft and was neither authorized nor owed by Plaintiff.

74. The CRA Defendants' violations of § 1681e(b) were willful, entitling Plaintiff to relief under 15 U.S.C. § 1681n, or, in the alternative, negligent, entitling Plaintiff to relief under 15 U.S.C. § 1681o.

**COUNT III — VIOLATION OF 15 U.S.C. § 1681c-2**
**(As to the CRA Defendants)**

75. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

76. Plaintiff submitted to each of the CRA Defendants the information required by 15 U.S.C. § 1681c-2, including proof of her identity, a copy of her FTC Identity Theft Report, an identification of the Account as information resulting from identity theft, and a statement that the Account did not relate to any transaction authorized by Plaintiff.

77. Section 1681c-2 required each of the CRA Defendants to block the reporting of the Account information within four business days of receipt of the foregoing. Each of the CRA Defendants failed to block the Account information as required, and Transunion and Equifax instead reinserted the Account after having deleted it.

78. The CRA Defendants' violations of § 1681c-2 were willful, entitling Plaintiff to relief under 15 U.S.C. § 1681n, or, in the alternative, negligent, entitling Plaintiff to relief under 15 U.S.C. § 1681o.

**COUNT IV — VIOLATION OF 15 U.S.C. § 1681s-2(b)**
**(As to Bank of America)**

79. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

80. Bank of America furnished information concerning the Account to the CRA Defendants.

81. After receiving notice of Plaintiff's disputes from one or more of the CRA Defendants, Bank of America was required under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation with respect to the disputed information, to review all relevant information provided by the CRA Defendants, and to report the results of its investigation and correct the inaccurate information.

82. Bank of America maintained in its own records the information necessary to determine that the Account was the product of fraud, including its own fraud-claim file, the seven identical $5,000 charges to a single remote payee that together exceeded the Account's credit limit, and the police report and FTC Identity Theft Report provided by Plaintiff.

83. Plaintiff's dispute presented a question of fact that Bank of America was able to investigate using records within its own possession and control, and did not require the resolution of any purely legal question.

84. Instead of conducting a reasonable investigation, Bank of America verified and certified the fraudulent Account as accurate — on shifting and internally inconsistent grounds — and continued to report Plaintiff as liable, causing Transunion and Equifax to reinsert the Account after each had deleted it.

85. Bank of America's violations of § 1681s-2(b) were willful, entitling Plaintiff to relief under 15 U.S.C. § 1681n, or, in the alternative, negligent, entitling Plaintiff to relief under 15 U.S.C. § 1681o.

## COUNT V — VIOLATION OF THE TRUTH IN LENDING ACT, 15 U.S.C. § 1643
## (As to Bank of America)

86. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

87. The Account was an "accepted credit card" issued by Bank of America to Plaintiff within the meaning of 15 U.S.C. § 1602 and Regulation Z, 12 C.F.R. § 1026.12.

88. The seven charges totaling $35,000 constituted "unauthorized use" of the Account within the meaning of 15 U.S.C. § 1602(o) — use by persons other than Plaintiff who had no actual, implied, or apparent authority to use the Account and from which Plaintiff received no benefit. Plaintiff surrendered her card solely for a single $15.00 transaction and did not authorize the seven charges or any other use of the Account.

89. Under 15 U.S.C. § 1643, Plaintiff's liability for the unauthorized use of the Account is limited to a maximum of $50.00, and Plaintiff is not liable for any unauthorized use occurring after she notified Bank of America. Plaintiff notified Bank of America of the unauthorized charges on September 14, 2025, the same day the charges were made.

90. Under 15 U.S.C. § 1643(b), Bank of America bears the burden of proving that the use of the Account was authorized or, if the use was unauthorized, that the conditions of liability set forth in § 1643(a) have been met. Bank of America cannot carry that burden.

91. Notwithstanding the $50 statutory limitation on Plaintiff's liability, Bank of America has demanded, and continues to demand, payment of the entire balance in excess of $35,000 as an authorized obligation of Plaintiff, and has furnished that balance to the CRA Defendants as an amount owed by Plaintiff.

92. By reason of the foregoing, Plaintiff is entitled to a declaration pursuant to 28 U.S.C. §§ 2201–2202 that her liability on the Account does not exceed $50.00, and to actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1640.

**COUNT VI — VIOLATION OF THE FAIR CREDIT BILLING ACT, 15 U.S.C. §§ 1666, 1666a**
**(As to Bank of America)**

93. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

94. The Account is an open-end consumer credit plan, and the seven unauthorized charges constitute a "billing error" within the meaning of 15 U.S.C. § 1666(b) and Regulation Z, 12 C.F.R. § 1026.13, including as an extension of credit that was not made to or authorized by Plaintiff and for which Plaintiff requested clarification.

95. Plaintiff sent Bank of America written notice of the billing error that was received within 60 days after Bank of America transmitted the first periodic statement reflecting the unauthorized charges, and that enabled Bank of America to identify Plaintiff and the reason for, and amount of, the billing error, including her written dispute sent by certified mail on October 2, 2025.

96. Upon receipt of Plaintiff's written notice, 15 U.S.C. § 1666(a) required Bank of America, within 30 days, to acknowledge the notice and, within two complete billing cycles (and in no event later than 90 days), either to correct the billing error or to conduct a reasonable investigation and provide Plaintiff with a written explanation of its basis for believing the Account to be correct.

97. Bank of America failed to conduct a reasonable investigation and failed to correct the billing error, and instead denied Plaintiff's dispute on shifting and internally inconsistent grounds.

98. In further violation of 15 U.S.C. §§ 1666(a) and 1666a, during the pendency of the dispute Bank of America continued to attempt to collect the disputed amount, reported and caused to be reported the disputed amount as owing and delinquent to the CRA Defendants, and restricted and closed the Account on the basis of the disputed amount.

99. By reason of the foregoing, Bank of America has forfeited its right to collect the disputed amount and related finance charges to the extent provided by 15 U.S.C. § 1666(e), and

Plaintiff is entitled to actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1640.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jessica H. Capwell respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

a. Actual damages against all Defendants pursuant to 15 U.S.C. §§ 1681n and 1681o, in an amount to be determined at trial;

b. Statutory damages against the CRA Defendants and Bank of America pursuant to 15 U.S.C. § 1681n(a)(1)(A);

c. Punitive damages against all Defendants pursuant to 15 U.S.C. § 1681n(a)(2);

d. A declaration, pursuant to 28 U.S.C. §§ 2201–2202, that Plaintiff's liability on the Account does not exceed $50.00 and that the remaining disputed balance is not a valid debt owed by Plaintiff;

e. Actual and statutory damages against Bank of America pursuant to the Truth in Lending Act and Fair Credit Billing Act, 15 U.S.C. § 1640, together with forfeiture of the disputed amount to the extent provided by 15 U.S.C. § 1666(e);

f. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, 1681o, and 1640;

g. Pre-judgment and post-judgment interest as allowed by law; and

h. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

PLAINTIFF JESSICA H. CAPWELL,
By her attorney,

/s/ Adam Deutsch
Adam Deutsch, Esq. (BBO # 569173)
Northeast Law Group
P.O. Box 60717
Longmeadow, MA 01116
413-285-3646
adam@northeastlawgroup.com

Kevin Crick, Esq. (BBO# 680950)
Rights Protection Law Group, PLLC
75 State Street, Suite 100
Boston, MA 02109
844-574-4487
k.crick@rightsprotect.com

Carolina Tumminelli, Esq. (BBO# 666234)
Rights Protection Law Group, PLLC
75 State Street, Suite 100
Boston, MA 02109
c.tumminelli@rightsprotect.com

Dated: July 23, 2026